

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

|   |   |
|---|---|
| In Re VIOXX® Products Liability Litigation | ) ) ) ) MDL Docket No. 1657 ) ) |

**MERCK & CO., INC.'S MEMORANDUM IN SUPPORT OF
ITS MOTION FOR COORDINATED PRE-TRIAL
PROCEEDINGS PURSUANT TO 28 U.S.C. § 1407**

Merck & Co., Inc. ("Merck") submits this memorandum in support of its motion for transfer and coordination pursuant to 28 U.S.C. § 1407 of all cases alleging personal injury and/or economic loss arising from the purchase and/or use of VIOXX® currently pending in the federal courts (identified in Merck's Rule 7.2(a)(ii) Schedule) (the "VIOXX® Product Liability Lawsuits"). Merck respectfully requests that the Judicial Panel on Multidistrict Litigation (the "Panel") transfer the VIOXX® Product Liability Lawsuits to the District of Maryland for coordinated pretrial proceedings or, in the alternative, to the Southern District of Indiana or Northern District of Illinois.

## **PRELIMINARY STATEMENT**

Merck is presently aware of 79 separate lawsuits in 37 federal districts that allege personal injury and/or economic loss as a result of the purchase and/or use of VIOXX®, a prescription medicine developed and sold by Merck. Due to the publicity surrounding Merck's recent voluntary withdrawal of VIOXX® from the market, additional suits are being filed daily. While there are some differences in the legal theories and claims asserted in these cases, all share certain overlapping issues of fact relating to Merck's development, state of knowledge, and pre- and post-approval testing of VIOXX®, and relating to alleged side effects of VIOXX®. Merck has moved to transfer all of the VIOXX® Product Liability Lawsuits to a single district for pretrial proceedings under 28 U.S.C. § 1407. Transfer of all such pending VIOXX® Product Liability Lawsuits – listed on Merck's Rule 7.2(a)(ii) Schedule – to a single district for coordinated pretrial proceedings pursuant to 28 U.S.C. § 1407 will eliminate duplicative discovery, avoid conflicting pretrial rulings, conserve the resources of the judiciary, and otherwise promote the just and efficient conduct of all actions.

On October 8, 2004, a plaintiff in a recently-filed VIOXX® Product Liability Lawsuit (Salvadore Christina, Sr.) made the first motion for transfer of VIOXX® Product Liability Lawsuits under 28 U.S.C. § 1407: that plaintiff's motion addressed only five lawsuits and requested transfer of the case to the Eastern District of Louisiana, a district that, prior to the filing of a single lawsuit there on the day after the voluntary withdrawal, had absolutely no connection to the VIOXX® Product Liability Lawsuits. Perhaps for this reason, plaintiff in that action did not spend one word in his moving papers explaining why the cases should be transferred to the Eastern District of Louisiana. Since the first MDL motion was filed, two other sets of plaintiffs (Linda Grant and Larry Chartrand, and Paul House) have requested MDL transfer of certain of the VIOXX® Product Liability Lawsuits – one to the Northern District of

2

Illinois, and one to the Western District of Oklahoma, respectively. Unlike the prior motions, Merck's motion encompasses all of the known currently pending VIOXX® Product Liability Lawsuits.

Merck respectfully submits that the Panel should transfer these proceedings to the District of Maryland, a court with a strong connection to the VIOXX® product liability litigation, and one that is well-prepared to handle this complex litigation. In the alternative, the Panel should transfer the VIOXX® Product Liability Lawsuits to the Southern District of Indiana, another district with both a significant connection to the underlying litigation and the resources to manage these cases, or to the Northern District of Illinois, another qualified district with VIOXX® cases on its docket, and one that has already been requested by plaintiffs in a VIOXX® suit.

## THE FEDERAL VIOXX® PRODUCT LIABILITY LITIGATION

The VIOXX® Product Liability Lawsuits allege individual and/or class claims of personal injury, economic loss, and/or the need for medical monitoring arising from the purchase and/or use of VIOXX®.

### A.  Background of VIOXX®

VIOXX® was one of the first of a new class of non-steroidal anti-inflammatory drugs ("NSAIDs"), called COX-2 inhibitors, which were designed to reduce the risk of serious gastrointestinal side effects associated with older NSAIDs. The Food and Drug Administration ("FDA") approved Merck's New Drug Application for VIOXX® in May 1999. *See* VIOXX® Package Insert 9183800, issued May 1999, at Exhibit A. VIOXX® was initially approved for the treatment of the symptoms of osteoarthritis, acute pain in adults, and primary dysmenorrhea. *Id.* In 2002, the FDA also approved VIOXX® for the treatment of rheumatoid arthritis in adults. *See* VIOXX® Package Insert 9183811, issued April 2002, at Exhibit B.

On September 30, 2004, Merck announced that in a prospective, randomized, placebo-controlled clinical trial there was an increased relative risk for confirmed cardiovascular events beginning after 18 months of treatment in the patients taking VIOXX® compared with those taking placebo. Given the availability of alternative therapies and questions raised by the data from that trial, Merck concluded that a voluntary withdrawal of VIOXX® best served the interests of patients.

### B.     The Federal VIOXX® Products Litigation

The first lawsuit against Merck alleging personal injuries as a result of the use of VIOXX® was filed in the Eastern District of New York on May 29, 2001. (*Lettieri, et al. v. Merck & Co., Inc.*, CV-01-3441.) In the three and a half years after *Lettieri* was filed but prior to Merck's voluntary market withdrawal of VIOXX®, other suits have been filed in state and federal courts against Merck alleging a variety of claimed injuries from the purchase and/or use of VIOXX®. As of September 30, 2004 – the date of Merck's withdrawal of VIOXX® – 41 federal cases alleging some form of recovery for plaintiffs who purchased and ingested VIOXX® were pending in 24 districts, involving a total of 378 plaintiffs (exclusive of purported class members).

The publicity surrounding Merck's voluntary withdrawal of VIOXX® from the market has spurred the filing of additional suits. Since September 30, an additional 38 suits have been filed in federal court, or filed in state court and removed to federal court, and there are now (as of October 21, 2004) 79 federal suits pending in 37 federal district courts involving 425 individuals and at least 20 overlapping purported class actions. Additional cases are being filed daily. The lawsuits allege a variety of product liability, medical monitoring, consumer fraud, and unfair business practice claims. Some of the cases have been filed by (or purportedly on behalf of) persons who do not allege that they were actually injured through their use of VIOXX®, but who

4

nevertheless assert that they are entitled to medical monitoring or to recover for supposed economic losses. *See, e.g., Cheeseman v. Merck & Co., Inc.*, Civil Action No. 1:04-CV-261 (D.Vt., filed October 4, 2004); *Saia et al. v. Merck & Co., Inc.*, Civil Action No. 04-12166 RCL (D.Mass., filed October 14, 2004).

## ARGUMENT

### I. ALL VIOXX® PRODUCT LIABILITY LAWSUITS PENDING IN FEDERAL COURT SHOULD BE TRANSFERRED TO A SINGLE VENUE UNDER 28 U.S.C. § 1407.

The Panel may transfer multidistrict litigation "involving one or more common questions of fact" for purposes of coordinated pretrial proceedings upon a finding "that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). *See also In re Air Disaster at Lockerbie, Scotland, on Dec. 21, 1988*, 709 F. Supp. 231, 232 (J.P.M.L. 1989) (purpose of transfer and coordination is to "serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation.") Here, the litigation at issue unquestionably involves "one or more common questions of fact," and transfer would serve the convenience of parties and witnesses alike, as well as the equitable and efficient conduct of these suits, a matter on which moving plaintiffs and defendant Merck agree.

#### A. There Are Overlapping Factual And Discovery Issues In The Currently Pending VIOXX® Product Liability Lawsuits.

Each of the 79 VIOXX® lawsuits identified on Merck's Rule 7.2(a)(ii) Schedule present certain overlapping questions of fact that make transfer and coordination the most efficient approach to managing these federal litigations. For example, in each of the pending actions, plaintiffs are seeking or likely will seek much of the same discovery from Merck pertaining to its development and pre-market and post-market testing of VIOXX®, including depositions of the

same employees and experts. This Panel has consistently recognized that Section 1407 transfer is a preferred way to manage individual lawsuits that raise similar questions as to a pharmaceutical defendant's development and testing of one of its prescription medicines. *See, e.g., In re Zyprexa Prods. Liab. Litig.*, 314 F. Supp. 2d 1380, 1381 (J.P.M.L. 2004); *In re Prempro Prods. Liab. Litig.*, 254 F. Supp. 2d 1366, 1367 (J.P.M.L. 2003).

### B. Section 1407 Transfer Will Promote The Just And Efficient Conduct Of These Lawsuits.

Moreover, with nearly 80 cases now pending in federal court that allege similar theories of liability and injury arising from plaintiffs' treatment with VIOXX®, duplicative motions will undoubtedly be made in these cases if they remain in separate courts. The suits allege claims against Merck based on theories of negligence, strict liability, breach of express and implied warranty, and misrepresentation, and all of the plaintiffs' claims (whether they seek personal injury damages or economic loss) arise from their alleged purchase and/or use of VIOXX®. Some of the cases are purportedly brought on behalf of identical or substantially identical classes seeking similar relief. Failure to coordinate these cases would potentially result in inconsistent rulings across federal circuits, unnecessary and duplicative discovery, and needless waste of judicial time and resources. *See In re Inter-Op Hip Prosthesis Prods. Liab. Litig.*, 149 F. Supp. 2d 931, 933 (J.P.M.L. 2001).

Accordingly, transfer and coordination are appropriate in these circumstances.

## II. THE DISTRICT OF MARYLAND IS THE MOST APPROPRIATE VENUE FOR THESE COORDINATED PROCEEDINGS.

While 28 U.S.C. § 1407 lists the factors the Panel is to consider in deciding whether to transfer for coordinated pretrial proceedings, nothing in Section 1407 or the Rules of Procedure of the Judicial Panel on Multidistrict Litigation addresses the specific factors the Panel is to consider in deciding where to transfer cases. Instead, it has developed as a matter of practice

since 28 U.S.C. § 1407 was enacted in 1968 that the Panel considers a variety of factors in deciding where to transfer cases, particularly when faced with the decision where to transfer a complex nationwide products litigation such as the VIOXX® cases present.

A review of relevant transfer orders in comparable products litigations over the past several years, and of oft-cited secondary sources (*e.g.*, MOORE'S FEDERAL PRACTICE, MANUAL FOR COMPLEX LITIGATION (Third)), shows a strong preference by the JPML Panel, where possible, to reconcile case-specific factors – *i.e.*, "where the largest number of cases is pending, where discovery has occurred, and where cases have progressed furthest, as well as the site of the occurrence of the common facts and the district in which cost and inconvenience will be minimized"[1] – with the desire to find a court and judge with the docket capacity, the capabilities, the available resources, and the experience to properly manage and oversee complex and involved litigations.[2]

Taking all this into consideration here, the District of Maryland is the most suitable transferee court for the VIOXX® Product Liability Lawsuits.

---

1. MOORE'S FEDERAL PRACTICE, MANUAL FOR COMPLEX LITIGATION (Third) § 31.131 (1995). *See also In re Wireless Telephone Radio Frequency Emissions Prods. Liab. Litig.*, 170 F.Supp. 2d 1356, 1358 (J.P.M.L. 2001) (transferring to the District of Maryland because "an action [wa]s pending there before Judge Catherine C. Blake, who already has relevant experience with some issues likely involved in this litigation."); *In Re Ephedra Prods. Liab. Litig.*, 314 F. Supp. 2d 1373, 1375 (J.P.M.L. 2004) (transferring to the Southern District of New York because "Judge Rakoff is in the process of establishing procedures for the conduct of the more than 60 actions brought against the Twinlab defendants").

2. *See, e.g., In re Rezulin Prods. Liab. Litig.*, transfer order dated June 9, 2000, at Exhibit C (transferring cases to an experienced transferee judge with a caseload that would allow him to handle the litigation); *In re Diet Drugs Prods. Liab. Litig.*, 990 F. Supp. 834, 836 (J.P.M.L. 1998) ("[W]e have directed our attention to meeting the obvious need for a transferee judge with the ability and temperament to manage this large and growing litigation in an efficient and expeditious manner").

A. **Case-Specific Factors Establish A Strong Connection Between The District Of Maryland And The Federal VIOXX® Product Liability Lawsuits.**

Federal VIOXX® Product Liability Lawsuits are now pending in 37 federal districts. Merck's voluntary withdrawal of VIOXX® on September 30, 2004, however, has spurred the filing of dozens of additional suits in courts that had no cases pending at the time of the withdrawal, so, while cases may appear to be pending in their dockets, the cases are so recent that the courts have taken no substantive action in directing the litigations. A notable example of this is the Eastern District of Louisiana which, prior to plaintiff's filing a single suit there on October 1, 2004, had no pending VIOXX® product liability cases on its docket. Therefore, only a handful of these 37 federal courts – including the District of Maryland – have actually had any real experience with the VIOXX® Product Liability Lawsuits.

The District of Maryland is one of only four federal courts to have had at least three separate VIOXX® Product Liability Lawsuits on its docket at the time of the voluntary withdrawal: two cases before the Honorable Catherine Blake (a jurist with considerable MDL experience) and one before the Honorable Alexander Williams. *See Edler v. Merck & Co., Inc.*, Case No. 03-CV-3612 (filed October 21, 2003); *Biles v. Merck & Co., Inc.*, Case No. 1:04-CV-00975 (filed January 12, 2004); *Morris v. Merck & Co., Inc.*, Case No. 04-CV-3024 (filed September 2, 2004). The *Edler* and *Biles* cases are progressing through discovery and have been the subject of court conferences. Medical records and responses to written discovery have been received from the plaintiffs, and depositions of the plaintiffs are scheduled for October 20 in *Edler* and October 25 in *Biles*. Thus, the District of Maryland already has familiarity and experience with this litigation that few other jurisdictions have.

In addition, the District of Maryland is geographically close and convenient to the sites and sources of the common discovery that will be directed towards the defendant, a fact the

JPML Panel often considers. *See, e.g., In re St. Jude Medical, Inc. Silzone Heart Valves Prods. Liab. Litig.*, 2001 U.S. Dist. Lexis 5226, at * 4 (J.P.M.L. Apr. 18, 2001) (transferring to "the situs of the headquarters of the sole defendant in all actions [because] the district is likely to be a substantial source of witnesses and documents subject to discovery"); *In re Welding Rod Prods. Liab. Litig.*, 269 F. Supp. 2d 1365, 1367 (J.P.M.L. 2003) (same). The sole pharmaceutical defendant in these proceedings is Merck. Most of the employees who have been deponents in the VIOXX® Product Liability Lawsuits work at Merck facilities in North Wales, Upper Gwynedd, and Blue Bell, Pennsylvania (all near Philadelphia), and a great percentage of the document production in the litigation comes from these locations. Additional witnesses and documents are located at Merck's headquarters in Whitehouse Station, New Jersey and at its facilities in Rahway, New Jersey (near Newark). All of these locations, where both the relevant Merck documents and the necessary witnesses are located, are within 200 miles of Baltimore, and easily accessible via air travel, Amtrak, and I-95.

Moreover, to the extent the MDL transferee court will work with the state courts in coordinating the VIOXX® Product Liability Lawsuits, this Panel should take note that the most advanced state coordination to date has taken place in southern New Jersey before the Honorable Carol E. Higbee of the New Jersey Superior Court, Atlantic County (Atlantic City, N.J.). Judge Higbee has issued multiple decisions and held numerous discovery conferences to date. The proximity of the District of Maryland court to Judge Higbee's court can only work to benefit the convenience of parties and judges alike. *See, e.g., In Re Ephedra Prods. Liab. Litig.*, 314 F. Supp. 2d at 1375-76 (transferring MDL to S.D.N.Y., and holding that "[Judge Rakoff] is in the best position to coordinate MDL-1598 pre-trial proceedings with the New York Twinlab actions, and – if appropriate – to informally coordinate the MDL-1598 actions and the New York Twinlab actions with the New Jersey Nutraquest actions pending before Judge Brown in order to

9

achieve the goals of economy and efficiency which are the hallmarks of both Sections 1407 and 157").

### B. The District Of Maryland Possesses The Available Resources And Experienced Jurists Needed To Guide This Federal VIOXX® Product Liability Litigation.

The District of Maryland is a court of capable and experienced judges, some of whom are already familiar with the issues raised in these proceedings. This court, therefore, is an appropriate venue for these proceedings.

Because the District of Maryland is well-suited for MDL assignments, it has been selected as an MDL venue often enough that its judges, courtroom staff, and clerk's office all have valuable experience adjudicating complex MDLs, particularly in the product liability context. *See, e.g., In re Protegen Sling and Vesica Sys. Prods. Liab. Litig.*, 2001 U.S. Dist. Lexis 1438 at * 8 (J.P.M.L. Feb. 7, 2001) (transferring products cases to the District of Maryland where "one constituent action is already pending, [and the District of Maryland] is an accessible, metropolitan district equipped with the resources that this complex docket is likely to require"); *In re Wireless Tel. Radio Frequency Emissions Prods. Liab. Litig.*, 170 F. Supp. 2d 1356, 1358 (J.P.M.L. 2001) ("We are persuaded that the District of Maryland is the most appropriate transferee forum for this litigation. We note that an action is pending there before Judge Catherine C. Blake, who already has relevant experience with some issues likely involved in this litigation"). In this case, as noted, two VIOXX® lawsuits are pending before Judge Blake.

While well-experienced with MDLs the District of Maryland is not overburdened with MDLs. As of September 2004, the court had eight pending MDLs before it – less than half the number of MDL proceedings pending before the Southern District of New York, but still more

than 86 of the 93 other federal districts.[3] Many of these MDLs are relatively mature and are likely to be winding down as the VIOXX® proceedings become active – in the past two years, the Panel has assigned fewer MDLs to the District of Maryland than it had in previous years, with only three MDLs having been assigned in the three years since the end of 2001, after three MDLs had been assigned there in 2001 alone.

There appears to be ample room on the court's docket for the VIOXX® product liability MDL. From a case management perspective, the dockets of the District of Maryland are extremely efficient, ranking 13th among 94 federal courts in 2003, with a 7.5-month median period from filing to disposition of civil cases. *See* Judicial Caseload Profile Report, Administrative Office of the Courts, at http://www.uscourts.gov/cgi-bin/cmsd2003.pl, at Exhibit D. According to the U.S. Courts website, the most recent statistics indicate that now would be a good time to transfer these cases to the District – total filings in the District of Maryland court fell 12.8% in the last reported period (ending September 30, 2003), the 7th highest drop in the country. *See id.* Furthermore, total filings of all cases per judgeship ranked 49th of the 94

---

3. Five of the nine active judges in this court's Northern Division (Baltimore) have MDL experience. Judge Blake, the presiding judge in two of the federal VIOXX® cases, has been on the bench for nine years, prior to which she spent eight years as a Magistrate Judge. *See* ALMANAC OF THE FEDERAL JUDICIARY, Vol. 1, 4th Cir., at 3 (2004). She at present has two MDLs pending on her docket – *In re Wireless Telephone Radio Frequency Emissions Products Liability Litigation* (2001) and *In re Royal Ahold N.V. Securities & "ERISA" Litigation* (2003) – and is one of four judges handling *In re Mutual Funds Investment Litigation*, MDL No. 1586 (2004). (In addition to Judge Blake, Judges Davis and Motz, as well as Judge Stamp of the U.S. District Court for the Northern District of West Virginia, have been assigned this MDL collectively.) Judge Williams, who sits in the Southern Division in Greenbelt, Maryland (close to and accessible by train from both Baltimore and Washington, D.C.) and has been assigned the other pending VIOXX® case, has been on the federal bench for ten years. *See* ALMANAC OF THE FEDERAL JUDICIARY, Vol. 1, 4th Cir., at 12 (2004). In addition to the three current MDLs in which Judge Blake takes part, there are also the following pending MDLs in the District of Maryland: *In re Second Chance Body Armor, Inc., Advertising Litig.*, MDL No. 1110 (Davis, J., 1996), *In re Allegheny Energy, Inc., Securities Litig.*, MDL No. 1518 (Davis, J. 2003); *In re ProteGen Sling and Vesica System Prods. Liab. Litig.*, MDL No. 1387 (Legg, C.J., 2001) (medical device product liability), *In re Microsoft Corp. Antitrust Litig.*, MDL No. 1332 (Motz, J., 2000), and *In re Cruciferous Sprout Patent Litig.*, MDL No. 1388 (Nickerson, J., 2001).

federal districts, demonstrating that the judges within the district are not, relatively speaking, overwhelmed with new filings.

Moreover, at this time the District of Maryland has neither present nor expected future judicial vacancies, *see* www.uscourts.gov/vacancies, at Exhibit E, and it has a number of cutting-edge technological systems that recommend it as a transferee site for these cases. In addition to its web site, *see* www.mdd.uscourts.gov, at Exhibit F, on which the court provides a direct link for parties to access case management information, judicial opinions, contact information and settlement and class action materials for its pending MDLs, the District of Maryland has also in recent years implemented an electronic filing system. *See* United States District Court, District of Maryland, Fiscal Year 2003 Annual Report, *available at* www.mdd.uscourts.gov/Reports/statistics/Reports/2003AnnualReport.pdf, at Exhibit G. This system, inaugurated in March 2003, enables attorneys to file their documents electronically as pdf files, and has already proved useful in managing the docket of other MDLs. *See In re Mutual Funds Investment Litigation*, MDL No. 1586, April 2, 2004 hearing transcript at pp. 8-11, at Exhibit H (Judge Motz discussing electronic filing system). The court has also installed public access terminals on its premises. Fiscal Year 2003 Annual report, at 2. The entire courthouse staff has been trained to use the electronic case management and filing system. *Id.* at 12.

Finally, Baltimore is a convenient location for all the parties to these proceedings, as it has a major international airport located between it and Washington D.C., as well as a centrally located train station. *See* www.baltimore.org/visitors/v_mapstrans_gethere.html, at Exhibit I (BWI airport is located 10 miles south of the city, and has 692 flights from nineteen carriers daily, including at least 70 non-stop routes; Amtrak trains run 24 hours a day). Baltimore also has at least twenty-seven hotels in its downtown neighborhood, and another forty-six in the other city neighborhoods. *See* www.baltimore.org/visitors/v_reservations_hotels.html, at Exhibit J.

12

Taken together, these factors indicate that the District of Maryland would be well-suited to handle this complex multidistrict litigation.

## III. IN THE ALTERNATIVE, EITHER THE SOUTHERN DISTRICT OF INDIANA OR NORTHERN DISTRICT OF ILLINOIS WOULD BE AN APPROPRIATE VENUE FOR THESE COORDINATED PROCEEDINGS.

### A. The Southern District of Indiana

Should the Panel decide not to transfer these proceedings to the District of Maryland, Merck suggests that the Southern District of Indiana would be an appropriate alternative transferee court. Like the District of Maryland, there are at present three VIOXX® Product Liability Lawsuits pending in this district. *See McCullough v. Merck & Co., Inc.*, Case No. 1:03-CV-1523-LJM-TAB (filed September 25, 2003) (McKinney, J.); *Morrison v. Merck & Co., Inc.*, Case No. 1:03-CV-1535-SEB-VSS (filed September 25, 2003) (Barker, J.); and *Van Jelgerhuis, et al. v. Merck & Co., Inc.*, Case No. 1:04-CV-1651-RLY-WTL (filed October 12, 2004) (Young, J.). One other case in the district court was dismissed with prejudice in July 2003. *See Roe v. Merck & Co., Inc.*, Case No. IP02-C-0721 B/S (filed April 15, 2002). Discovery in both *McCullough* and *Morrison* has been ongoing: medical records and plaintiff's discovery responses have been received in each; plaintiff McCullough was deposed on October 11, 2004; and her physicians are scheduled for deposition the week of October 25th.

In addition to its experience in the past year with VIOXX® matters, the Southern District of Indiana also has significant familiarity with MDL proceedings. Since 1990, two products liability MDLs have been assigned to the court, one of which was a pharmaceutical matter. *See In re Eli Lilly & Co. Prozac Prods. Liab. Litig.*, MDL No. 907 (Dillin, J.). Moreover, there are at present three pending MDLs in this district: *In re Bromine Antitrust Litig.*, MDL No. 1310 (Barker, J., 1999), *In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, MDL No. 1373 (Barker, J., 2000), and *In re AT&T Corp. Fiber Optic Cable Installation Litig.*, MDL No. 1313

13

(Hamilton, J., 1999). In addition to Judges Barker and Hamilton, who have been on the bench for twenty and ten years, respectively, there are three additional active judges in the Southern District of Indiana, two of whom – Chief Judge McKinney and Judge Tinder – have been on the bench for seventeen years each, and the most junior of whom – Judge Young – has already been on the bench for six years. *See* ALMANAC OF THE FEDERAL JUDICIARY, Vol. 1, 7th Cir., at 87-88, 91-93 (2004).

Thus, the Southern District of Indiana has a strong combination of collective knowledge and experience in multi district litigation, along with three seasoned judges who have no pending MDLs on their dockets and would be well-suited to take on the VIOXX® cases.

In terms of docket congestion, the Southern District of Indiana has no present or future anticipated judicial vacancies. *See* Exhibit E. The number of total filings decreased in 2003 by 4.5% over the previous year. The court also has strong technological capabilities; its web site provides links to the ongoing *Bridgestone/Firestone* MDL, including dockets, contact information, selected opinions and orders and scheduling announcements. In addition, the Southern District of Indiana, sitting in Indianapolis, is geographically central.[4] *See In re Baycol Prods. Liab. Litig.*, 180 F. Supp. 2d 1378, 1380 (J.P.M.L. 2001) ("Given the geographic dispersal of current and anticipated constituent actions," assignment to "a major metropolitan court" that is "centrally located" is desirable.); *In re Inter-Op Hip Prosthesis Prods. Liab. Litig.*, 149 F. Supp. 2d at 933 (choosing the Northern District of Ohio as "an accessible, geographically central metropolitan district.").

---

4. Indianapolis has the largest privately-managed airport in the United States, which is located 10 miles from its downtown area and has 175 national and international flights daily, including 36 non-stop routes, for 18 carriers. *See* www.indy.org/sections/visitors/, at Exhibit K. In addition, the city has within its limits more than 21,500 guest rooms in 165 hotels. *Id.*

Accordingly, the Southern District of Indiana, with its specific experience in VIOXX® Product Liability Lawsuits as well as its broad MDL expertise and capabilities, would be a suitable alternative venue should this Panel decide not to transfer the proceedings to the District of Maryland.

### B. The Northern District of Illinois

As did plaintiffs Grant and Chartrand, Merck also suggests that the Northern District of Illinois would be an appropriate alternate transferee court. There are already two VIOXX® cases pending in this district, *see Grant v. Merck & Co., Inc.*, Case No. 1:04-CV-6407 (Anderson, J.); *Ivory v. Merck & Co., Inc.*, Case No. 1:04-CV-6762 (Shadur, J.). Also, the Honorable David H. Coar issued remand and class certification decisions in a case plaintiff ultimately dismissed. *See Zeedyk v. Merck & Co., Inc.*, Case No. 02-C-4203. Furthermore, the Northern District of Illinois has considerable experience with MDLs; since 1990, a total of thirty-three MDLs have been assigned to the District, of which four have involved product liability claims. *See, e.g., In re "Factor VIII or IX Concentrate Blood Products" Prods. Liab. Litig.*, MDL No. 986. Moreover, there are at present twelve MDLs pending in the Court, before eight of the thirty-two active and senior judges. Thus, the Northern District of Illinois has considerable experience in multi district litigation, along with a significant number of judges with room on their dockets for additional coordinated proceedings should this Panel choose to transfer the VIOXX® cases.

In terms of docket congestion, the Northern District of Illinois has only one current and no anticipated future vacancies (Judge Suzanne Conlon took senior status in April 2004). *See* Exhibit E. In addition, in 2003 the court ranked 4th among 94 federal courts in median time of disposition for civil cases, with a time period of 5.5 months. *See* www.uscourts.gov/cgi-bin/cmsd2003.pl, at Exhibit L. With its central geographic location and large, active airport,

15

Chicago has often been cited as a prime candidate for MDLs. *See, e.g., In re Ocwen Federal Bank FSB Mortgage Servicing Litig.*, 314 F. Supp. 2d 1376, 1379 (J.P.M.L. 2004) ("the Illinois district is geographically centrally located for these actions which are pending throughout the United States"); *In re America Online, Inc.*, 162 F. Supp. 2d 690, 691 (J.P.M.L. 2001) ("the geographically central district will be a convenient location for a litigation already nationwide in scope"); *In re StarLink Corn Prods. Liab. Litig.*, 152 F. Supp. 2d 1378, 1381 (J.P.M.L. 2001) (Northern District of Illinois "is conveniently located and readily accessible for most of the litigants").

Notably, the Northern District of Illinois has already been the subject of a plaintiff's request as the transferee district for these cases. On October 18, 2004, plaintiffs Grant and Chartrand filed an "Interested Party Response" before the Panel requesting that their VIOXX® product liability cases be transferred to the Northern District of Illinois. In support of their request, these plaintiffs cited many of the same factors Merck describes above, including the relative lack of docket congestion of the Northern District of Illinois' courts, and the resources and technology employed by its courts. Where both plaintiff and defendant have agreed on a single district as appropriate for MDL transfer, this Panel has considered the parties' mutual request and transferred cases to that district. *See, e.g., In re Welding Rod Prod Liab. Litig.*, 269 F. Supp. 2d 1367; *In re MTBE Prods. Liab. Litig.*, 2000 U.S. Dist. Lexis 14901, at *1-*2 (S.D.N.Y. Oct. 10, 2000).

Accordingly, Merck respectfully requests that should this Panel decline to transfer the VIOXX® cases to the District of Maryland or the Southern District of Indiana, it should in the alternative assign them to the Northern District of Illinois, which has both the experience and the convenient location essential for an MDL court.

16

## CONCLUSION

For the foregoing reasons, Merck respectfully requests that the VIOXX® Product Liability Lawsuits be transferred for coordinated pretrial proceedings to the District of Maryland, or in the alternative, to the Southern District of Indiana or the Northern District of Illinois.

Dated: October 21, 2004

> Respectfully submitted,
>
> HUGHES HUBBARD & REED LLP
>
> *[signature]*
>
> Norman C. Kleinberg
> Theodore V. H. Mayer
> William J. Beausoleil
> One Battery Park Plaza
> New York, NY  10004-1482
> (212) 837-6000 (telephone)
> (212) 422-4726 (facsimile)
>
> Attorneys for Merck & Co., Inc.