

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

|   |   |
|---|---|
| In Re VIOXX® Products Liability Litigation | ) ) ) ) ) ) | MDL Docket No. 1657 |

### MERCK & CO., INC.'S MOTION FOR EXPEDITED CONSIDERATION

Merck & Co., Inc. ("Merck") respectfully moves the Judicial Panel on Multidistrict Litigation (the "Panel") for expedited consideration of Merck's pending motion to transfer all federal VIOXX® product liability actions (the "VIOXX® Product Liability Lawsuits") for coordinated pretrial proceedings.

1. On October 8, 2004, a plaintiff in a VIOXX® Product Liability Lawsuit moved pursuant to 28 U.S.C. § 1407 for MDL transfer of five separate VIOXX® Product Liability Lawsuits to the Eastern District of Louisiana. On October 18, 2004, two additional plaintiffs' groups submitted § 1407 requests, one seeking transfer of various VIOXX® Product Liability Lawsuits to the Northern District of Illinois, the other seeking transfer to the Western District of Oklahoma.

2. On October 21, 2004, Merck itself moved pursuant to 28 U.S.C. § 1407 for MDL transfer of all known currently pending VIOXX® Product Liability Lawsuits, a total of 79 separate actions in 37 districts as of the date of this motion.

3. By letter posted October 14, 2004 on the JPML website, the Panel gave notice of the matters set for hearing at its next session on November 18, 2004 in Dallas. The VIOXX® Products Liability Litigation (MDL 1657) was not one of the MDLs set for hearing on that date.

4. Absent expedited consideration, Merck understands that a hearing on the VIOXX® MDL proceedings would not otherwise be held until late January 2005, at the next session after the November 18th Panel session. For the reasons described below, Merck urges this Panel to expedite consideration of its § 1407 motion, and set the motion for hearing on November 18, 2004. In the alternative, Merck requests that the Panel convene a special session, as it did in MDL No. 1373 (*In re Bridgestone/Firestone, Inc., AT, ATX II and Wilderness Tires Products Liability Litigation*), to consider Merck's motion to transfer as soon as is reasonably practicable thereafter.

## Background of VIOXX®

5. VIOXX® was one of the first of a new class of non-steroidal anti-inflammatory drugs ("NSAIDs"), called COX-2 inhibitors, which were designed to reduce the risk of serious gastrointestinal side effects associated with older NSAIDs. The Food and Drug Administration ("FDA") approved Merck's New Drug Application for VIOXX® in May 1999. (*See* VIOXX® Package Insert 9183800, issued May 1999, attached hereto as Exhibit A.) VIOXX® was initially approved for the treatment of the symptoms of osteoarthritis, acute pain in adults, and primary dysmenorrhea. (*Id.*) In 2002, the FDA also approved VIOXX® for the treatment of

2

rheumatoid arthritis in adults. (*See* VIOXX® Package Insert 9183811, issued April 2002, attached hereto as Exhibit B.)

6. On September 30, 2004, Merck announced that in a prospective, randomized, placebo-controlled clinical trial there was an increased relative risk for confirmed cardiovascular events beginning after 18 months of treatment in the patients taking VIOXX® compared with those taking placebo. Given the availability of alternative therapies and questions raised by the data from that trial, Merck concluded that a voluntary withdrawal of VIOXX® best served the interests of patients.

### The Publicity Surrounding Merck's Voluntary Withdrawal Of VIOXX® Has Spurred New Litigation In Federal Courts Throughout The Country And Activity in Federal Courts Where Suits Are Pending.

7. As of Merck's voluntary withdrawal of VIOXX® on September 30, 2004, 41 federal cases alleging some form of recovery for plaintiffs who purchased and ingested VIOXX® were pending in 24 federal districts, involving a total of 378 plaintiffs (exclusive of purported class members). The publicity surrounding the withdrawal has fueled the filing of additional lawsuits. Since September 30, 2004, an additional 38 suits have been filed in federal court, or were filed in state court and removed to federal court, and there are now 79 federal suits pending in 37 federal district courts. These cases now involve claims by 425 individuals, as well as at least 20 overlapping purported class actions.

8. New lawsuits are being filed daily, and the rate of filing may well increase as new plaintiffs' attorneys begin bringing suit. Many of these suits are being filed in state courts and, where appropriate, Merck is removing them to the federal courts.

9. In addition to the new lawsuits, Merck's voluntary withdrawal of VIOXX® have led plaintiffs in many of the pending suits to seek expedited and compressed discovery relating to the withdrawal. Prior to the withdrawal, Merck had responded to numerous discovery

3

requests and had made a number of its employees and experts available for deposition. Since the withdrawal, counsel representing plaintiffs in cases in various federal and state cases all over the country have greatly stepped up their discovery efforts. Plaintiffs in multiple cases are requesting the depositions of many Merck current employees, former employees, and experts. Many of the requests are for the same people, and include, among others, the current president of Merck Research Laboratories.

10.  For example, on October 18, 2004 plaintiffs' counsel in *Daley v. Merck & Co., Inc.*, No. 6:03-CV-509 (E.D. Tex.), noticed fifteen depositions of Merck current employees, former employees, and experts. Some of these people have already been deposed before and should not have to be deposed again. Others are being deposed in the New Jersey state court coordinated proceeding. Also, plaintiffs' counsel in *Lassig v. Merck & Co., Inc.*, No. M-03-0180-M (N.D. Tex.), requested a deposition of a corporate representative to testify about the withdrawal. Plaintiffs' counsel in a Texas state court action has asked for the same deposition.

11.  At the same time Merck is facing discovery requests that overlap, it is also facing discovery requests that differ. There is every reason to expect that the attorneys who have recently filed VIOXX® cases will make their own discovery requests. The timing here is critical. Some plaintiffs' counsel operating under schedules that were put in place prior to the withdrawal have demanded that Merck make their employees and experts available for depositions on very short notice. Immediate coordination is necessary in these circumstances to avoid unnecessarily duplicative discovery, inconsistent rulings on discovery and other matters, and an inordinate drain on the resources of Merck and the federal judiciary.

## There Are Substantial Reasons Why Merck's Motion Should Be Heard On November 18.

12.     Waiting until the end of January 2005 before hearing Merck's § 1407 motion would work a substantial hardship on Merck, as it would force Merck to expend substantial resources in multiple courts addressing the same discovery and other issues that will in all likelihood be mooted by this Panel's issuance of a transfer order.

13.     Moreover, Merck has done everything possible to ensure that MDL transfer may be considered on an expedited basis. Since Merck's voluntary withdrawal of VIOXX® on September 30, 2004, Merck has expeditiously removed 21 cases to federal court and made every single known pending federal VIOXX® Product Liability Lawsuit a part of its motion for MDL transfer. Upon acceptance by the Panel of Merck's filing, the time of each party to any federal VIOXX® Product Liability Lawsuit to respond to Merck's MDL motion will begin to run. Briefing on the issue can timely close prior to the Panel's November 18, 2004 session.

14.     There is precedent that supports this Panel's granting Merck's motion for expedited hearing here. In connection with the *Bridgestone/Firestone* MDL proceedings, the Honorable Michael M. Mihm of the United States District Court for the Central District of Illinois issued an order staying a case before him. In doing so, he urged this Panel to expedite consideration of the MDL request, recognizing that the defendants in those cases faced numerous impending discovery proceedings, motions, and hearings. He observed that there were "'very substantial and serious' reasons of judicial administration why these cases should be coordinated in a single court. Firestone is now named as a defendant in half a hundred putative class action lawsuits spanning many different jurisdictions. Courts in most or all of those jurisdictions will be asked to invest judicial resources in resolving similar issues between now and the time that the Panel acts on the § 1407 motions. Neither the parties nor the judicial system should waste

resources by engaging in these duplicative proceedings." (Renewed Motion, Filed Pursuant to Court Order, For Expedited Consideration of the Pending Motions for Transfer and Coordination or Consolidation under 28 U.S.C. § 1407, at ¶ 5, attached hereto as Exhibit C (quoting transcript of 9/11/00 hearing before Judge Mihm)).

15. In response to motions made in the *Bridgestone/Firestone* MDL, the Panel then granted the expedited consideration and convened a special hearing. (*See* Hearing Order, dated September 27, 2000, attached hereto as Exhibit D.)

16. Here, the concerns raised in the *Bridgestone/Firestone* MDL apply with even greater force. While the moving papers submitted for expedited hearing in that case revealed that approximately 50 new cases had been filed in the six weeks between the recall of approximately 6.5 million tires and the filing of motion papers with the Panel, Merck has seen 37 new federal VIOXX® suits in just the first three weeks after the withdrawal was announced. In light of this, the need for expedited hearing is more acute here.

17. Given the publicity surrounding Merck's voluntary withdrawal of a popular prescription medication from the market, there is every reason to believe that if Merck must wait three and a half months from today to have its § 1407 motion heard, Merck will face many new cases, as well as duplicative discovery requests and motion practice in the existing cases.

18. The MDL statute was enacted in the first place to avoid just such wasteful and inefficient proceedings, with their attendant drain on scarce judicial resources. The Rules of Procedure of the Judicial Panel on Multidistrict Litigation give the Panel wide latitude to act in the best interests of justice. Rule 16.1(a) provides that "[t]he Panel shall convene whenever and wherever desirable or necessary in the judgment of the Chairman" and that "[t]he Chairman shall determine which matters shall be considered at each hearing session."

19. In light of the fact that the Panel is meeting on November 18, 2004, shortly after briefing will likely have closed in the proceedings, Merck respectfully requests that the Panel add this matter to its docket on that date.

20. In the alternative, should November 18th be unavailable, Merck requests that the Panel convene a special session, as it did in the *Bridgestone/Firestone* MDL, to have this matter heard.

WHEREFORE, Merck requests that the Panel enter a Hearing Order granting expedited consideration of Merck's motion for coordinated proceedings pursuant to 28 U.S.C. § 1407 of the federal VIOXX® Product Liability Litigation, and setting the motion for hearing on November 18, 2004, or as soon thereafter as practicable.

Dated: October 21, 2004

Respectfully submitted,

HUGHES HUBBARD & REED LLP

*[signature]*

Norman C. Kleinberg
Theodore V. H. Mayer
William J. Beausoleil
One Battery Park Plaza
New York, NY 10004-1482
(212) 837-6000 (telephone)
(212) 422-4726 (facsimile)

Attorneys for Merck & Co., Inc.

892657_1

8